Next case will be 061073, Thompson v. Microsoft Corporation. Mr. Kocanowski? Yes, may I proceed? We'll wait until they are seated. Whenever you're ready. Mr. Kocanowski, I represent the appellant, Robert Thompson, in his Hundredth Enrichment case against Microsoft. I understand from the court's clerk that there was an issue the court wished to have addressed that was not addressed in the briefs, and I understand that to be the 1338A issue, if that is correct. The posture of the case is it was filed in both diversity and 28 U.S.C. 1338A. We did not brief the issue in our briefs. I think the answer to whether or not the court does have 1295 jurisdiction by way of 1338 is that it does. I think the answer is contained in the discussion in the Hunter-Douglas case, 153 F. 3rd, 1318, which addresses a variety of state law claims and discusses the jurisprudence of 1338 on the subject of whether the case involves a substantial question of patent law. One of the areas that the Hunter-Douglas court points out has been decided as involving substantial patent law is inventorship, citing MCV v. Kane-Seeley, 870 F. 2nd, 1568. Inventorship was not challenged in this case, is that right? I'm not sure if I understand the question. Inventorship Let me be clear. The complaint does not raise an issue of inventorship, correct? I don't believe that is correct. The complaint does use the word invent or invention, I believe in paragraph 11 of the amended complaint. Did you challenge in the complaint the inventorship of the two Microsoft patents mentioned in that complaint? We did not seek to correct inventorship. We claimed that various claims of those two patents were in fact conceived and invented by the appellant. I understand that, but that was pled as part of your unjust enrichment count. That's correct. But you did not seek to correct the inventorship, which would have been a claim under Title 35. That's right. We did not seek to correct inventorship of the patent. And indeed, a change in inventorship was not really an element of the count that you did plead for unjust enrichment, correct? A correction of the inventors of the patent was not. The fact of inventorship was challenged, did become a substantive and a substantial issue in the case. But only in the context of your complaint for unjust enrichment. That's right. And I believe that, I'm certainly, there was no count under Title 35. My, our reading of the law does not suggest that one has to have a Title 35 count. But no, but I mean, if you refer, for example, to the Supreme Court's opinion in Christensen v. Colt, in that opinion it says, 1338 jurisdiction extends only to those cases in which a well-pleaded complaint establishes either that federal patent law creates the cause of action or that plaintiff's right to relief necessarily depends on a resolution of a substantial question of federal patent law. That is correct. And since... And my point is that as I read your complaint, I don't see that whatever reference was made in that complaint to inventorship necessarily turns on a resolution of the question of inventorship under patent law. Well, Your Honor, my answer to that may very well be that the question, it seemed to us that the question of inventorship, whether or not it involves federal patent law, was decided in the first American cyanamide case. The American cyanamide case, I mean, post-Christensen, the cyanamide case... No, there was a direct challenge to inventorship in that case. Well, there was a direct challenge to inventorship, but that case went further than that. That case vacated findings of unjust enrichment in favor of the plaintiff and directed the district court to retry the case using federal inventorship standards, and I think fairly unequivocally said in that case that if you're going to challenge by way of any state or federal statute the question of inventorship, then you have to use a federal inventorship standard. There has to be one unified federal standard, and I believe that that would dispose of the notion that, even though it's not pleaded, and we certainly would plead it as a state law complaint. There's no question about it. It's defended a removal of inventorship. Well, but that's the issue. That goes to the heart of the question before us. It's all about whether you have raised that issue in the complaint that either presents a federal question or requires a resolution of a substantial question of federal patent law. If you don't convince us that that's the case, then I fail to see how we have jurisdiction. Your Honor, I have to say that I think the district court never questioned it. I think the parties didn't question it after Microsoft removed the case under those grounds. But we're questioning it. I understand the court. I don't know that I can give the court a better answer than I believe the question is decided. In the MCV case, in the American Saniment case, the first American Saniment case, the 196th second citation, and the Hunter-Douglas. Hunter-Douglas found 1338 jurisdiction in a injurious falsehood state law cause of action. Part of that necessarily involved a finding that the defendant's assertion that they have exclusive rights to make or not. Part of that has to do with invalidity of the patent. But here, in this case, how is the question of who are the named inventors on those two patents critical or determinative or in any way essential to the complaint as presented on Justin Richman? I don't think that the ultimate finding of who are the inventors on the two patents that we claim Microsoft wrongfully procured is critical to the cause of action as pled. However... So the determination of your complaint, the determination of the claim as set forth in I disagree, Your Honor. In order for the plaintiff to prevail, the plaintiff, I think, would have to show that he invented the concepts that are claimed or certain of the concepts that are claimed in the two patents. So are you saying that if you lose on the question of whether that patent has the correct inventors on it, you lose this case, period? No, I... I think that's what you just said, that the outcome of the case depends on the resolution of the inventorship issue. I just recast that question. No, I'm sorry. I don't think I said that, and certainly that is not the intent. I think that the question of on Justin Richman was whether or not the defendant wrongfully took something. That something is the concepts, the inventions that became embodied in those patents. Whether or not there's a ruling later on that the correct inventorship was put on those patents is irrelevant to the cause that we pleaded, but the fact of inventorship is at issue, and how you construe inventorship, I think, is a federal patent law standard. That is what the American Siena Midcourt said. So you're saying that you could lose on the question of proper inventorship and still win the unjust enrichment case? Whether or not there's proper inventorship, whether there... Is not essential to your winning the case. It is an element. Can we win other ways? Yes, we can win other ways. Well, we move on to the merits, and we'll hear from the other side on this issue when they come up. Does the court wish me to address the merits at this juncture? No, you're here. Your Honor, I'll address them quickly because we have been before the court, I've been before the court on the Ultra case before. I think the briefs set forth the cases pretty well. I think the district court made a mistake in reading the American Siena Midcourt cases and the Ultra case. I don't think there's any substantive difference between the facts, the undisputed facts, in our case and the second Siena Midcourt opinion, and I think there's no question that we pleaded and asked the court specifically, unlike in the Ultra case, to let us have incremental damages as a measure of damages. The court allowed that in granting summary judgment, but allowed that as if it was pleaded from the beginning. The case is a very unusual case in the posture that the district court essentially stated for three years, waiting for various decisions from this court. We disagreed with that, but that's how it is. So the case has almost come to this court in a 12-B type posture because the facts, the actual facts, who said what to whom, who invented what, who passed what piece of paper to whom, a lot of those were disputed, and were disputed in the first summary judgment motion, which the court denied. So we pointed that out in our briefs, and I think unless there's questions about particular facts, I'm happy to rest on the factual recitation in our briefs. Very quickly, so that I'm sure just what your incremental damages arguments are. You had two theories. Just quickly review them for me so I'm sure I'm with you. The first, I think, completely unobjectionable, would be for the head start damages of some kind. During the short period before the May 19th exhibition? That's right. Okay, gotcha. For the relatively short period. The second one seemed to me a little trickier. Now what was the second? I thought the district court had a little trouble with that too. The second one was, I believe that the... The licensing advantage, sort of, as opposed to the value of the patent. That's right. It's not the royalties obtained, but the tactical advantage of having the patents in the back pocket. That's right. The essence of it. There were cross licenses and so forth, and that was, you know, we read the decision of this court in the second case pretty carefully. It's fairly clear to us, unless the court changes the way it rules, that one cannot, we cannot, or a plaintiff cannot follow royalty-like damages into a product that's put out in the market. That was something we played originally. I recognize that that has probably been ruled as preempted in the interim. But the notion of having a patent in and of itself, giving a competitive advantage, giving a commercial advantage, yes, I think that is something that's incremental. Thank you. May it please the court, turning first to jurisdiction, I can tell you we have no counterclaim, so we don't have that issue in this case at least. I think there is jurisdiction here, and I think there is jurisdiction because inventorship is a crucial element of the plaintiff's claim. Not inventorship in the federal cause of action sense of he's seeking the relief of changing the inventors. But to prevail on his claim, he needs to prove that the Microsoft inventors did not invent the subject matter of those two patents. What does that have to do with any kind of a head start that Microsoft might have gained? Well, here's why I think, and this is a problem with the plaintiff's incremental damages theory. I think it misconceives what incremental damages are. But let me try to deal with the jurisdictional issue first. His claim is that Microsoft misappropriated his invention by patenting it without his knowledge. It was the patent of 2012 of his amended complaint. But this is not a misappropriation case. This is an unjust enrichment. Well, I think the unjust enrichment flows from the misappropriation. You have to have something that makes it unjust. What makes it unjust here is that according to his complaint, Microsoft patented his invention without his permission, without his knowledge. He only discovered it according to him years later. So I think it is true that Microsoft didn't invent the subject matter of those patents and that he did. Everything, all of his incremental damages claims, both the head start and the other theory, flow from, I mean, they need to flow from that initial misappropriation because without that, you don't have anything unjust happening. All you have is use of public domain information. So I think that's why under Hunter Douglas, under Christensen, I think federal patent law is essential to one of the elements of the complaint, the claim as pleaded. But now your argument is that he fails, his cause of action fails if he cannot prove in the under patent law standards incorrect inventorship. Correct. He disagrees with that. I first thought he had said yes, but I think he's clearly saying no, that isn't a necessary element of his proof. It would be us, but it isn't necessary. Assuming that's the theory of his case, would we have jurisdiction to address a case predicated on that theory? Well, if the theory of his case is as you can discern it from the well pleaded allegations of the complaint, I want to distinguish between what his complaint alleges and what might be said in a brief or an argument because what determines jurisdiction are the well pleaded allegations of the complaint. Now if there is a way, and I think it's clear under Christensen and Hunter Douglas, for example, if there's a way that the plaintiff, based on the well pleaded allegations of his complaint, can prevail that does not require determination of an issue of federal patent law. Which is what I understood him to say in response to me. That is what he said just now, yes. Then I think there is not a rising under jurisdiction under section 1338. But I don't think that's his case because again, what you have to look at is what did he plead in the complaint and I believe the way he pleaded his complaint is that Microsoft misappropriated his intellectual property by getting a patent on it without permission and from that flowed these various incremental benefits or incremental damages. He also pled that these ideas were being used by Microsoft improperly. Right, but they are, it's improper only because he claims that he invented them. What he says, he says in the complaint and he also says elsewhere, when Microsoft uses, it was his idea and Microsoft used it without permission. Right, but it has nothing to do with the title or the inventorship? No, it has everything to do with the title or the inventorship because his theory is that what Microsoft did wrong was it patented his invention. That's what makes it a misappropriation and that's what he alleges in his complaint. His complaint goes beyond it and talks about use. Well right and that's where he's talking about the damages that flow from the misappropriation. But his complaint, the point I'm trying to make is that his complaint is not limited to the fact that the patents were obtained. The complaint also describes the fact that this information was obtained, obtained under circumstances where Thompson expected to get some benefit from Microsoft and Microsoft went ahead and used it without any, without sharing any of the benefits with him. Right, but I think it's important to note both in his complaint and in the argument before the District Court, he disclaimed any contract claim, he disclaimed any reliant, he disclaimed that he was claiming that he relied to his detriment on Microsoft. There's no trade secret claim. So again, you have to come back to okay, well what did Microsoft do that was wrong? And what he alleges Microsoft did that was wrong was patent his invention. Well that's not all he says. In paragraph 15 of the complaint, defendant has been unjustly enriched by its unauthorized, unlawful, and unjust, A, misappropriation, B, patenting, and C, use of plaintiff's intellectual property. Three separate things. Not simply patenting. I understand, but I think that you have to read that with reference to the rest, I mean that's his summing up paragraph. I think you have to read that with reference to the rest of the complaint. And I think the rest of the complaint, as he pleaded it, hinges on Microsoft engaging in misappropriation by patenting his invention. He pled the way you are reading it to us, but he is explaining today what he means by that. He's not standing by. He is taking a logical reading of what he said, which is inconsistent with what you're saying. Well he is taking a reading of his case. Well it is his case, but at this point, the case has been pending for over five years, and I think at some point you can't be changing your complaint. And again, it's the allegations of the well pleaded complaint, and jurisdiction of course is determined at the time. And the way his claim may have evolved since then, as it may have evolved today, I think doesn't change the question whether there was jurisdiction when the case was pleaded. And that's what determines district court jurisdiction, and I believe that's what determines this court's jurisdiction. And I would note, just in terms of how he characterizes his claim, even in his reply brief in this court, at page two he says that Microsoft was unjustly enriched by falsely claiming to be an inventor of technology, which it did not invent. I'm sorry, what did he say? It's wrongfully claiming to be the inventor of his technology. So I think that even if you're looking at post-complaint characterizations, which I don't believe you should do, I think it's really the well pleaded allegations of the complaint, I think you can find that same theme both in his briefs in the district court and even in his briefs in this court. Now there's no question I take it that this case belonged in the district court. Yes, there was clearly diversity. So it's really this court's jurisdiction that's really at issue here. So it's either this court or the Sixth Circuit. Exactly. Exactly, Your Honor. And if it's this court, it's limited to the theory of inventorship, and if it's in the Sixth Circuit, presumably it's not necessarily limited to that theory. At least that's your position. Well, I guess I'm not sure what my position is if it's in the Sixth Circuit. I think, clearly here the way he has pleaded his complaint is that it's inventorship only. Well, the first half of that is clearly your position. And I suppose that if this court decides that he in fact has alternative theories, then I assume that's probably law of the case, and I'm stuck with that, whether I'm happy with it or not, if we're in the Sixth Circuit. Alright. I'm happy to continue to talk about jurisdiction. I think that it's much Let me turn to the merits then. This case is just like ultra-precision. He claims, just as in ultra-precision, that he had contact with Microsoft. They led him to believe they were interested in the invention. To cut to the chase, and we have briefed this at some length, but to cut to the chase, the difference that he points out between this case and ultra-precision is that in ultra-precision the plaintiff declined to do what the plaintiff asked to, and was allowed to do in this case, which was to, Nuk Protunk amend his complaint to add a theory of incremental damages. Now, doesn't that make on the merits a significant difference with respect to the question of preemption? It does not, and what the reference is to incremental benefits in ultra-precision and American cyanamide meant. Those references don't mean, I don't think, that a state law claim is preempted if it seeks use-based royalty type damages, but that the identical claim, based on the identical facts, is not preempted if the plaintiff comes up with some other damages theory. In fact, if that were the rule, then the claim in American cyanamide would probably have been preempted, because those were, after all, use-based type damages in the sense that they were based on profits on the sales of the product that the plaintiff doctors invented. I think what this court meant in American cyanamide and ultra-precision when it referred to incremental benefits, I think it meant benefits that a defendant received over and above the benefits that were made available to the public from the public disclosure. How about the period? The benefits accruing to Microsoft during the period before the public disclosure? Now, I understand your argument as well. He hasn't shown that there were any. But the district court didn't rule on that ground. The district court ruled on preemption grounds. The district court didn't say summary judgment for failure to introduce any sufficient proof. Right, right. Here's why I think preemption applies, even acknowledging that. You can't just say head start and be done. You have to allege some facts. We're not saying he has to prove anything at this point, because you're quite right, the district court didn't rule on the facts. But there was no, he made it clear in the district court that what he was seeking to do was change his damages study. His expert had done a damages report basically that was a royalty damages type report. It looked at how many copies of Windows were sold, what's the appropriate royalty rate. He concluded after ultra-precision that he could not claim those kinds of damages, because there had been public disclosure of his invention long before Microsoft was making these sales. So then the district court actually in the argument on summary judgment focused him on the two to three week period between his disclosure of the software to Microsoft in April and then the May trade show where it was publicly disclosed and subsequently posted on the internet and all that. But he didn't allege that Microsoft did anything with the information during that period. In that sense it's just like ultra-precision in the sense that Ford had the information for actually quite a bit longer than this before it was publicly revealed by the publication of the plaintiff's patents in that case. But there was no allegation that it did anything with that information. The products it sold and its own patents were only applied for and obtained after publication. That's the same situation here. Microsoft didn't apply for its disclaimed any claim to damages based on product sales. So he in his briefs and argument talks about Head Start but there's no factual allegation of any sense in which Microsoft would have obtained a Head Start. Well there is some reference to this declaration by Philip Green that I'm sure you're familiar with. And in that declaration Mr. Green talks about the incremental benefits can be measured in a number of ways. These include the amount of additional profits specifically attributable to the use of the technology. That sounds like something preempted by ultra-precision. The value of cost savings derived from the use of technology or the costs the defendant avoided related to the purchase or internally development of the technology. And that latter expression does suggest or sound to me that it's some sort of a Head Start. Perhaps Your Honor but there were no factual allegations to that effect. What you have there is a proposal. I think I can come up with a new damages study. If I'm given, I think you wanted 30 more days or something. So in effect you're saying that whatever amendment the district court agreed to was simply an amendment to the damages presentation but not necessarily to the facts underlying that that would support a Head Start or other incremental benefit above and beyond what the public might have. Well that's exactly right Judge Lynn and I say that for two reasons. One is that's what the district court said and if you look it's at the sort of the end of the transcript of the summary judgment hearing and there are several places but appendix pages 2462 to 63 there's an exchange between Mr. Kolanowski and the court and he says Mr. Kolanowski at 2462 says well I'm not, I don't think it's a new claim it's simply a rephrasing of the amount level of damages that I've pled since 19 or since the year 2000. And then the district court goes on and says that that's exactly the way he understands the request that you're seeking to present a new theory of damages. But at no time was there an amended complaint tender or any factual allegations that would support the kind of incremental benefits theory that the court was alluding to in for example alter precision. But what is interesting to me about that quote because I had it marked as well is that the judge doesn't then go on to say what you just said which is you haven't backed this up with facts. He says it's just a new theory of damage. That's not going to change my view on preemption which I take it to mean that's preempted too. Which is a different legal ground it seems to me from the one you're suggesting. Earlier in the transcript of the argument and I don't, I apologize I don't have the page reference at my fingertips but there's another exchange between the court and Mr. Kolanowski where the judge says well all you're talking about is damages, it's damages theories. And that's different from preemption. And Mr. Kolanowski disagrees with the judge and says no damages are exactly what it's all about. So I think the judge was, you're seeing the tail end of the discussion here. I think the judge was articulating exactly the theory that I was just articulating to the court. Thank you your honors. Your honor I think that your honors the confusion was that the district court stayed the case for three years. And I don't know why, we never had a good explanation but the district court did stay the case for three years. And in the interim several decisions came down. And it seems almost inconceivable to me that the district court could render summary judgment on anything other than simply the law as the court saw it. There were no factual disputes regarding damages. There were no, in fact the only party that put forth any actual facts in the summary judgment was us. And essentially Microsoft's entire motion on which it won was a legal argument about preemption. I think the court, district court was confused about what preemption is and how it works. And I think that the transcript would bear that out. I think that the discussion we had, the argument we had with the court was wide ranging and ultimately I don't know why and parties really cannot say that they know why the district court ruled the way it did. To what extent  following the colloquy that we looked at a moment ago? Your Honor, I filed a motion. I filed a written motion that included the Phil Green's affidavit or declaration prior to the summary judgment hearing. Did your motion have proposed amendments to the complaint or anything specific? The motion did not contain a new amended complaint. It pointed out that in the three years in which the court had essentially stayed the case, both the ultra court and the second cyanamide court addressed the notion of incremental damages and addressed it in the ultra precision case fairly specifically. Again, I go back to my question. In what way do you believe your complaint has been amended? Well, certainly to the extent that the court did not understand that I was seeking damages from the period of time that Thompson gave whatever he gave to Microsoft to the time that the patents were issued and beyond. I wanted to make it very clear to the court that I was not forgoing and forgiving those sorts of damages that the plaintiff in ultra chose not to plead. Those would include the head start type of damages. I wanted to make it very clear to district court and I think district court understood. That's all well and good in terms of damages, but the question I guess goes to your adversary's argument a moment ago that while the court may have been receptive to your advancing a different theory on damages, there was nothing in the complaint or nothing in the amendment or proposed amendment as to any underlying facts that would support any unjust enrichment claim in terms of that Microsoft got an advantage by getting this information prior to members of the public. It got a head start or saved costs in development because it learned of this information from your client. That sort of thing. There's nothing that I see in the colloquy or anything else that would suggest that the complaint was amended in that way. Your Honor, I think the point I would make to Judge Tarnow, Phillip Green's declaration which listed the sorts of damages that would fall under what I would consider incremental damages. I also reminded the court that I believe that the theory I pled from the beginning and which was in the case from the beginning involving the theory that Judge Bryson asked me about, about the incremental benefit of having the patents, that that's specifically in the complaint. Now, at page 2465 in the colloquy with the judge, the judge at one point says, I granted your motion to amend your pleadings to include the language of incremental whatever. That was a written motion? Yes, Your Honor. Alright, with specific language amending the complaint? I didn't find it. Is it in here somewhere in the appendix? Do you know? Yes, it is. To be fair, it's on the tail end of my supplemental brief to the judge prior to the September 05 hearing. But we would find it in the appendix? Yes, Your Honor. It is a paragraph in my brief. Thank you very much. Case is submitted.